McGREGOR W. SCOTT
United States Attorney
DAWRENCE W. RICE, JR.
Assistant U.S. Attorney
3654 Federal Building
1130 "O" Street
Fresno, California 93721
Telephone: (559) 498-7272

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:04-CR-5153 AWI |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT'S SENTENCING |
| v. | ) | MEMORANDUM |
| | ) | |
| VOLODIA AKOPIAN, | ) | |
| | ) | |
| | ) | DATE: May 23, 2005 |
| Defendant. | ) | TIME: 9:00 a.m. |
| _____ | ) | Hon. Anthony W. Ishii |

The government respectfully submits this sentencing memorandum regarding defendant VOLODIA AKOPIAN. For the reasons provided below, the government recommends in conformity with the plea agreement that the Court impose a sentence of 18 months which is at the low end of the applicable guideline range. To be brief, there is no basis for downward departure or merit to the defendant's request for a sentence of 9 months home confinement.

Regarding time credits, the plea agreement provides:

> **II. B. Time Credits:** The defendant understands that the government will agree to recommend that the defendant be given credit for the time he spent in state custody in Los Angeles Superior Court case No. BA 256005. The charge of possession of a silencer to which the defendant is pleading guilty in CR. F. 04-5152 AWI was also charged in state court in Los Angeles County Superior Court Case No. BA 256005. The defendant was in

1

1
2
3
4
5
    custody on the possession of a silencer charge and a state murder charge from the date of his arrest on November 3, 2003, until he was released on bond on the federal possession of a silencer charge in CR. F. 04-5152 AWI.  The state murder charge and state possession of silencer charge were dismissed at the preliminary hearing in Los Angeles County Superior Court in July of 2004.  The defendant acknowledges, however, that the government has advised him that time credit computations as to his sentence will be made by the Bureau of Prisons.

6
7
8
9
10
    To be brief, the defendant is entitled to credit for the 273 days in custody already served on the underlying silencer possession charge, but that credit will be awarded by the Bureau of Prisons and the defendant will still have nine months to serve before being placed on supervised release.

11    I.   Booker Analysis

12
13
14
15
16
17
18
19
20
21
22
23
24
25
    In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury.  As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory."  Booker, 125 S. Ct. at 756.  This ruling results in a system in which the sentencing court, while informed by the Guidelines, may impose any sentence within the statutory maximum penalty for the offense of conviction.  The sentence will be subject to review by the Court of Appeals for "reasonableness."  Id. at 765-66.

26
27
28
    In the wake of Booker, this Court must make a correct calculation under the existing Sentencing Guidelines, and then consider the final guideline calculation when determining the

sentence to be imposed.  Justice Breyer's majority opinion directed that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  Id. at 767.

The position of the United States is that, absent highly unusual circumstances, the sentence in a criminal case should fall within the guideline range as determined by the Court.  This view is shared by Congress and the Supreme Court.  As every Supreme Court justice in the various opinions in Booker recognized, the Guidelines carry out the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible and be based on the offender's actual conduct and history.  See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 758 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of 15 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by

Congress.  The Guidelines, consisting of offense characteristics and various grounds for departure, address all of the considerations relevant to sentencing, as articulated in 18 U.S.C. § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ."

Thus, fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing, and should occur absent unusual circumstances.  The government commends to the Court's attention the scholarly opinion in <u>United States v. Wilson</u>, 2005 WL 78552 (D. Utah Jan. 13, 2005), which shared this conclusion.  In his assessment in <u>Wilson</u>, on the day after <u>Booker</u> was decided, Judge Cassell explained at length the reasons supporting this view.  As he stated, the Guidelines represent the product of an expert commission, which has studied the sentencing process at great length, under the specific mandate of Congress to fashion recommended sentences which carry out the purposes defined by Congress.  The resulting Guidelines, <u>Wilson</u> held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to

4

1 Congressional preference. <u>Wilson</u> further observed that guided
2 sentencing appears to have had a positive impact in deterring
3 criminal conduct throughout the country, and thus serves the purpose
4 of deterrence as well as punishment and fairness.  For all of these
5 reasons, Judge Cassell determined that "the court will give heavy
6 weight to the Guidelines in determining an appropriate sentence. In
7 the exercise of its discretion, the court will only depart from
8 those Guidelines in unusual cases for clearly identified and
9 persuasive reasons." <u>Id.</u> at *1.

10    Accordingly, a sentence within the guideline range is
11 presumptively reasonable, and accommodates the Congressional
12 purpose, affirmed by the Supreme Court, of obtaining fair sentences
13 which are uniform to the extent possible.  The government
14 anticipates that only sentences outside the guideline range will be
15 subject to appellate scrutiny for reasonableness in light of the
16 Congressional mandate.

17    In this case, no unusual circumstances exist which warrant an
18 exception to the preference for guideline sentencing.  Therefore,
19 the government respectfully recommends that the Court sentence the
20 defendant within the applicable sentencing guideline range to 18
21 months.  Such a sentence would be in accord with the seriousness of
22 defendant's offense conduct.

23 DATED: May 19, 2005              Respectfully submitted,

24                                    McGREGOR W. SCOTT
25                                    United States Attorney

                                    By/s/Dawrence W. Rice, Jr.
26                                      DAWRENCE W. RICE, JR.
27                                      Assistant U.S. Attorney

28